Chief Justice Bibb
delivered the Opinion of the Court.
On the first March, 1822, execution of fi. fa based in favour of Susan and Wm. Rankin, administrators of A. Rankin deceased, assignee of Anderson, vs Elandley and Griffith, which was returned by John Railway, deputy sheriff for Wm. Glen, sheriff of Daviess county, "came to hand March 2, 1822; executed and replevied.”
The replevin bond was signed, by George Handley and John Hathway, is witnessed by the deputy *555 sheriff, (with the initials of his office,) who made return of the execution; the bond bears date on the 28th March, 1824, is payable to Susan and Wm. Rankin, omitting to add that they were administrators of A. Rankin, assignee of Anderson; the condition recites the Execution by its date, and as being against Handley and Griffith, the court, the fi. fa. the sums of principal and interest and costs; that it issued in the nanie of Susan and Wm. Rankin, (omitting their fiduciary characters, and omitting to state they were assignees,; that Handley demanded a replevin; therefore &c. The principal, interest, and costs arc stated separated, and the aggregate amount is made principal, to be paid in two years with interest.
Causes of defendants motion to quash the bond.
Motion overuled.
The form and recitals required by the act of '96 in replevin bonds, applied only to contracts prior to Feb. '93, and have not been required by the subsequent acts, and are not now necessary.
*555 At April term, 1824, Handley and Hathway moved to quash the bond for these causes assigned.
1st. That it does not appear upon the face of the bond, that the execution came to the hands of the sheriff.
2. That it does not appear that it was taken by the sheriff
3. That principal, interest and costs are made principal to be paid with interest on the amount.
4. There is a variance between the execution and the condition of the bond,
5. The bond is given to plaintiffs in their own proper right, when the execution is in their character as administrators.
6. The bond is without seal.
The court overruled the motion to quash» and the movers appealed.
The first and second causes assigned suppose that those recitals were required. The counsel for the movers may have been led into this mistake by the provisions of the statute of 1796, 1 Dig, § 21, 22, supposing them to apply to replevin bonds generally and to the bond taken in this case. That part of the statute applied only to executions on before the first of February, 1793, as required to *556 be so endorsed on the execution. But the act of 1799, 1 Dig. 497, and the subsequent statutes, regulating replevin bonds, do not require any particular recitations or form in replevin bonds, taken by the sheriff. If taken before a clerk of the court, the form of the recognizance is prescribed.
Replevin bond, taken on an execution in favor of S & W R. adm’rs, is good, omiting their fiduciary addition.
Seal is not necessary to a replevin bond.
Compound interest.
It is sufficient for it to appear with reasonable certainty, under what execution the bond was taken.
What variance is intended by the fourth cause, the court does not perceive distinctly. If it be in allusion to the replevin by Handley and his security, without Griffith, that objection does not lie with the movers, the bond recites the execution as against Handley and Griffith, and it is no variance that can he complained of by Handley and his surety, that Handley was permitted to replevy. See Edwards vs Greenwell, Har. 189.
The fifth cause, is wise drawn, over nice and too attenuated. A bond given to, or by A. B. executor or administrator, is but a description of the person, and be may sue or be sued, in his individual character. The names of Susan and Wm. Rankin connected with the other recitals in the bond, are sufficient to identify the execution on which it is founded.
The sixth cause, has no force. The statute of Kentucky has given to unseated writings the force and effect of sealed writings; and a seal is therefore unnecessary to make a bond.
As to the third objection that the condition binds the obligors to pay principal, interest and costs, with interest, the case of Hatcher vs Kelly and Brent, Bibb 282, has settled that.
As to the causes of variance and objections generally, it may be observed that they are technical and hypercritical. In deciding upon objections to replevin bonds, two rules should be observed. 1st. That the bond should contain such recitals, as that the upon which it is founded, may be identified and rendered certain to a common intent; so that it may be applied to the execution, as a continuation of if, and shew the authority by which it was taken. 2ndly. That the bond is for the proper amount which the plaintiff has a right to demand, *557 and which the defendant is bound to pay, and that it sufficiently secures that sum to be paid at the time required by law. If the replevin bond conforms to these rules, to a reasonable and common intent, it is sufficient. It should be the endeavour of all courts, to bring the decision of causes to that which constitutes the real justice and merits of the case. What that is in the present controversy, can not bear a moment’s dispute.
Judgment sustaining the bond, affirmed.
Motion for damages.
Motion to quash a replevin bond does not suspersede it or suspend proceedings on it—
-Nor does the appeal of the mover from judgment overruling his motion, have such effect.
The decision of the court, in overruling the motion to quash, must be affirmed.
The appellee’s counsel, anticipating an affirmance, as well he might, has prayed for damages to be given, if in the opinion of the court, they could be awarded.
It must be remembered that the question came before the court below upon a motion to quash. No writ of error coram vobis with supersedeas bad been obtained, no stay of execution on the replevin bond or supursedeas to it, as a judgment, had been effected. Upon motion to quash the bond, the court refused to do so, and from that the appeal w as taken. The motion to quash, did not supersede the bond; the refusal of the court to grant the motion, did not supersede the bond. A motion for an injunction, or a motion for a supersedeas in tin’s court, does not suspend the proceedings on the judgments to which the motions apply, during the pendency of the motions, and the advisement of the court.
To supersede a previously existing and operating judgment, rendered at a former term, an order for that purpose by a competent authority is required. If a motion be made to a competent authority, and that tribunal denies the motion, that denial can not amount to a grant of the thing denied; nor an appeal from the denial, convert, it into an affirmation of and grant of the supersedeas. The appeal has the effect to suspend the decision appealed from. Now the decision appealed from, was the refusal of the court to quash the bond for the causes assigned. When the motion was made the bond was in full force as a judgment, the motion of itself did not *558 operate as a supersedeas; the denial of the motion did not operate as a supersedeas; the appeal from tin denial can nut be a supersedeas to the bond; it cannot change the negative character and effect of the decision, into an affirmative effect and force, as if the motion had been granted. If it were so, it is plain that the movers, the defendants in the execution and obligors in the replevin bond, would have superseded the effect of the replevin bond, by their own act and will, in despite of the judgment of the court.
An appeal from a judgment against the actor suspends the judgment against him for costs, but where it was a motion to quash a statutory bond, that is not suspended.
An appeal carries the sentence appealed from, into the appellate court, with all the rights of the parties growing out of that judgment, to be decided in the appellate tribunal. Until the appellate court acts, the decision of the inferior tribunal is not changed nor reversed. A negative sentence is not by the appeal, changed into an affirmative judgment. The appellant acquires no right by his appeal, but the suspension of the ultimate execution of the decree, judgment or sentence appealed from, until the appellate, court acts upon the subject. Neither party during the pendency of the appeal, can rightfully proceed contrary to and in opposition to the decision appealed from. If the plaintiff in court has a judgment which is the foundation of his right to have execution, and he defendant appeals, then the plaintiff must forbear to execute his judgments, until the appellate tribunal shall decide, if the defendant has judgment, by which he a quires a new and affirmative judgment for execution against the plaintiff (as for costs,) then by the appeal of the plaintiff the defendant is prevented from proceeding to execute that judgment, in the cases of original and affirmative judgments and decrees, the effect of appeal is easy and familiar in practice. But in cases founded on and relating to former judgments, a distinction must be taken between an affirmative act and judgment of the court, touching a former judgment, and suspending i , and a negative judgment of the court, in refusing to touch or suspend. An injunction granted, a supersedeas awarded, a motion to quash granted, are affirmative judgments, until reversed or set aside, these judgments have *559 their force and effect to enjoin, supersede and binder execution of the matters referred to. The mere act of the party interested, can not evade and destroy the effect of a judgment or decree, of the court. So on the other hand, where the judgment, sentence or decree touching a former judgment or decree is of a negative kind, refusing an injunction, refusing a supersedeas, refusing to quash, the mere act of the party interested can not evade and destroy the effect and force of the former judgment or decree, to which this negative judgment of the court relates; he cannot supersede and suspend a pro existing judgment or decree, but by the assent of a court of competent jurisdiction. This appeal from the refusal of the court to supersede or suspend a former judgment or decree, can not by mere act of the party interested be converted into an affirmative judgment or grant of a right. If the court had in this case, granted the motion and quashed the bond, then the mover having the affirmative judgment annulling the bond, the plaintiff in execution and replevin bond could not, by his mere act of appeal hate destroyed the whole for e sand effect of this judgment, and entitled himself to proceed upon the replevin bond, as upon a reversal; he must have, awaited the decision of the appellate court
So the mover, the defendant in the execution and replevin bond, having asked the court to quash, and the court having rejected his application, can not by his own mere will reverse the judgment, by tin appeal from this negative judgment, and convert it into an affirmative grant of his application and motion. By his appeal in this case, the mover has brought Isis motion up for revision. But by his appeal, he obtained no supersedeas to the judgment of replevin bond; he had none before, his motion, the court gave him none upon his motion, he. could not. by his own mere will, give himself a supersedeas to a previous existing judgment or replevin bond. By his motion made and overruled, he placed himself in a condition to have applied to the appellate court, or one of the judges thereof, in the recess, for a supersedeas.
Writs of error from this court were maintained to quash statutory judgment bonds—until the act of 1802.
Perhaps a writ of error with supersedeas from this court to the judgment of the circuit court overruling the motion of the obligors to quash a replevin bond, in a supersede the statutory judgment on such bond.
Formerly the practice had been to sue writs of error to replevin bonds and executions, before any application to the inferior courts. By statute of December 24, 1802, 3 Litt. 92, 1 Dig. 388, writs of error with or without supersedeas, to stay any judgment or execution on replevin bonds, or bonds for the forthcoming of property. “for any error in such bonds, or in the officer taking the same,” are prohibited until the error thereof, shall have been adjudged of by the inferior court, and in Smith vs. Carr. &c. Hard. 307, the court corrected the practice of suing writs of error to executions for irregularities and error of ministerial officers, before the inferior courts had been applied to for correction.
After the decision of the court below in this case, the obligors might have applied for a supesedeas to the appellate court or one of the judges thereof, and a supersedeas to the replevin bond, if allowed, would have been effectual, and upon the record containing the replevin bond, assignment of errors and decision of the court thereon, a writ of error with supersedeas allowed to the decision, might have been perhaps, considered as substantially a writ of error to the replevin bond, having the force of a judgment. But the appeal taken by the party, having no supersedeas by allowance of error caram nobis, nor by the judgment of the court upon his motion, was no supersedeas nor suspension of the replevin bond, nor of its effect as a judgment, nor any obstacle to suing execution thereon. It was well observed in argument, that if an appeal to a rejected motion to quash, suspend or supersede a judgment of a former term, or upon such like motions as this, could have the effect of delaying the execution of the judgment to which such motion alluded, there would be no end, nor any execution of a judgment, so long as the defendant would move to quash, and appeal from the refusal.
As nothing was due by the judgment appealed from, and the appeal did not delay nor supersede the execution of the statutory judgment, by force of the replevin bond alluded to in the motion, no dam *561 ages can be given on the affirmance of the judgment appealed from.
Triplett, for plaintiff; Mayes, for defendant.
Judgment affirmed with costs.